**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1406-18T3

CITY OF PATERSON,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

GREAT FALLS PRESERVATION
AND DEVELOPMENT
CORPORATION,

     Defendant-Respondent/
     Cross-Appellant.

_____

          Argued March 10, 2020 – Decided April 2, 2020

          Before Judges Fisher, Accurso and Gilson.

          On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-4603-14.

          Michael S. Nagurka argued the cause for appellant/cross-respondent (Rothstein Mandell Strohm & Halm, PC, attorneys; Michael S. Nagurka, of counsel and on the briefs).

          Norman M. Robertson argued the cause for respondent/cross-appellant.

PER CURIAM

At the center of the parties' disputes in this matter is the Thomas Rogers Building. This building, which is listed on the State and National Register of Historic Places, was utilized by the Rogers Locomotive Works, one of the largest and most prominent locomotive manufacturers in the nineteenth century. A Rogers locomotive was used by the Union Pacific Railroad in May 1869 for the "driving of the Golden Spike" ceremony in Promontory, Utah. Defendant Great Falls Preservation and Development Corporation (Great Falls) was formed in 1970 to fight a highway planned to run through Paterson's old mill district near the scenic Great Falls. Its successful efforts led to the dedication of the Great Falls Historic District by President Gerald R. Ford in June 1976.

The owners donated the rundown Rogers Building to Great Falls. To rehabilitate the building through the securing of federal funds, Great Falls deeded the property to plaintiff City of Paterson in exchange for a fifty-year lease on the upper floors of the four-story building. Great Falls used rental income from upper-floor subtenants to offset the cost of the routine maintenance and operation of the building, as well as to assist in establishing – as was the City's obligation – a museum on the first floor. The deed provided Great Falls with a right of reversion if the City ever defaulted on its obligations.

The plan proceeded without troubles until some twenty years later when the City refused to pay for the building's capital needs. This circumstance led to the City's 1997 suit to void the lease because, in the City's view, the capital needs were generated by Great Falls' failure to maintain the building and its systems. At the conclusion of a bench trial, then Chancery Judge Susan Reisner determined that the City was responsible for capital needs and there was "no proof on this record that Great Falls neglected the routine maintenance of the building." In October 2000, Judge Reisner directed the City to apply for all available grants. The City failed to comply.

In May 2013, a partial collapse of an exterior wall dumped bricks and wood onto a sidewalk, and the failure of a small roof caused serious leaks onto an electrical panel. According to Great Falls, for years the City was aware but chose to ignore the building's problems.

This suit was commenced in December 2014. Again, the City sought to void the lease, claiming Great Falls had failed to properly maintain the building. The City's equitable claims were summarily rejected; one count of Great Falls' counterclaim, which alleged a civil rights violation, was also dismissed by way of summary judgment. At the conclusion of a seven-day bench trial, the judge determined that the City "failed to prove by a preponderance that Great Falls

3

neglected routine maintenance thereby necessitating the City to have to expend money on improvements." The City's complaint was dismissed, and Great Falls was awarded $109,608.42 in damages on the remaining counts of its counterclaim.

As part of his original decision, the trial judge "direct[ed]" that the money recovered by Great Falls on the judgment "must be used exclusively by Great Falls for the operation and maintenance of the Rogers Building"; the judge also obligated Great Falls to account for its expenditures from this fund. In response, Great Falls expressed concern about the limitation the judge had placed on its recovery, noting that it had other obligations, including counsel fees incurred in this action. After providing the parties with an opportunity to be heard, the judge concluded that, "[u]pon further reflection," he should not have imposed any limitation on how Great Falls "uses the money it collects on the judgment." As a result, the restriction placed on the funds recovered in collecting on the judgment was vacated.

The City appeals, arguing only that, in its view, the trial judge "abused [his] discretion by altering [the judgment] and ignoring the American Rule by permitting Great Falls to expend capital meant for the upkeep of [the Rogers Building] on counsel fees." Great Falls cross-appeals, arguing that the judge

erred in granting summary judgment on its civil rights claim and, in fact, that the judge should have granted summary judgment in favor of Great Falls, not the City. For the reasons that follow, we find the City's appeal frivolous and Great Falls' cross-appeal meritless.

I

We first briefly address the City's appeal. As noted, the trial judge initially determined that the compensatory damages awarded to Great Falls should be expended on "operation and maintenance" of the building, and he included in the judgment an obligation on Great Falls to account for its expenditures. When Great Falls argued that it had other expenses – including unpaid counsel fees – caused by having to respond to the City's meritless complaint, the judge relented and removed the limits he had placed on Great Falls. The City interprets the judge's revision of the judgment as tantamount to awarding counsel fees in Great Falls' favor and argues that the "American Rule" prohibits a fee award in this case.

Of course, the City is correct that the American Rule, which this State embraces, prohibits the shifting of counsel fees onto the losing party absent application of one of the enumerated circumstances in Rule 4:42-9. See In re Niles Trust, 176 N.J. 282, 293-94 (2003). But that argument is inapplicable

here.  The judge did not order the City to pay Great Falls' counsel fees.  Instead, as we have recounted, the judge awarded Great Falls compensatory damages that did not include or encompass any counsel fees that Great Falls may have incurred.  The judge originally limited the manner in which Great Falls could expend its recovery but later relented when Great Falls' argued that it faced a threat to its existence if it could not pay its attorneys from the damage award.  The City's argument that this determination should be equated with a shifting of fees is simply frivolous.

II

Great Falls' cross-appeal challenges the trial court's disposition of its civil rights claim.  We find no merit in its arguments.

Great Falls did not assert that claim when first filing its answer and counterclaim.  Instead, it later sought leave to file an amended counterclaim for that purpose; the motion judge determined there was an alleged factual basis for a claim under 42 U.S.C. § 1983.  Later, when both parties moved for summary judgment on this claim, the motion judge ruled in favor of the City.

A-1406-18T3

Section 1983[1] does not create substantive rights. It instead provides a remedy for a deprivation of rights. In a suit under this statute, the plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States committed by a person acting under color of law. City of Oklahoma City v. Tuttle, 471 U.S. 808, 816-17 (1985).

Although section 1983 expressly refers to "a person" acting under color of law as the target of such a claim, it is now recognized, in the wake of Monell v. Dep't of Soc. Servs., City of New York, 436 U.S. 658 (1978), that liability may also attach to municipalities. A municipality may be "accountable for the action of an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" Besler v. Board of Educ., 201 N.J. 544, 565 (2010) (quoting Stomel v. City of Camden, 192 N.J. 137, 146 (2007)). That is, a municipality may be held liable under section 1983, but "only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). A municipality may not be held liable

---

[1] Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A-1406-18T3

through respondent superior or vicarious liability doctrines.  Ibid.  So, to sustain such a cause of action, a plaintiff must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Ibid.  The policy itself does not have to be unconstitutional, but the policy must be the "moving force" behind the constitutional violation.  Id. at 389; Monell, 436 U.S. at 694.

Based on these broad principles, the Supreme Court has determined that a municipality's failure to train its employees in a relevant respect may constitute a policy or custom if the municipality's failure evidences a "deliberate indifference" to an obvious risk.  Canton, 489 U.S. at 389.  An example of this, as the Court held, would be arming officers without training them "in the constitutional limitations on the use of [the arms]."  Id. at 390 n.10.

Section 1983 also permits claims arising from a municipality policy or custom that interferes with a citizen's substantive due process right "to be free from state-created danger."  Gormley v. Wood-El, 218 N.J. 72, 98 (2014).  Our Supreme Court has determined that such a cause of action requires evidence on all four of the following prongs:

> (1) "the harm ultimately caused was foreseeable and fairly direct";

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or "a member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

[Id. at 101 (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (citations and footnotes omitted)).]

To factually support this theory, Great Falls argued in the trial court that the City's two mayors – during a span of time when the City's obligations concerning the building were neglected – "were the only ones who had the power to choose to ignore the dangers at the Rogers Building" and that they were both "warned repeatedly of dangers," as expressed in the reports of a professional engineer and its director of historic preservation. Concerns about the building's problems, according to Great Falls, were realized when, on May 10, 2013, a wall collapsed and rained bricks onto a sidewalk that could have been – but wasn't – occupied by pedestrians. Because the claim was disposed of summarily, Great

Falls is entitled to a favorable view of the evidence presented. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Even assuming the truth of Great Falls' allegations, however, the theory does not fit the alleged circumstances. The "stated-created-danger" theory presupposes a danger of personal injury to the claimant or a discrete class of persons, whereas the claimant here – Great Falls – argues only that it was threatened with or actually suffered injury to its property or contract rights as a leaseholder. Gormley's third prong requires proof of a danger to the claimant or a discrete class, and not just danger "to a member of the public in general." Gormley, 218 N.J. at 101. The only threat of personal injury was to members of the public in general, not Great Falls as an entity.

In Gormley, for example, an attorney who visited her client at a state-run psychiatric hospital for the involuntarily committed was attacked and seriously injured by her client. The Court determined that the injured attorney had a viable "state-created-danger" claim because the defendants "brought the dangerous patient together with the attorney in an unsecured setting," "literally . . . le[aving] [her] to fend for herself when she was viciously attacked." Id. at 109. Other cases that have applied this theory require an actual or threatened physical harm resulting from the state action. See DeShaney v. Winnebago Cty. Dep't of

10

Soc. Servs., 489 U.S. 189, 192-93 (1989) (considering an allegation that a child in the state's custody was, due to state inaction, subjected to violence committed by his father); Kennedy v. Ridgefield City, 439 F.3d 1055, 1063 (9th Cir. 2006) (considering whether the victim's shooting by a neighbor was caused by a police officer's false assurances to the victim that her allegations of sexual assault against the neighbor would not be disclosed without her first receiving a warning); Kneipp by Cusack v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996) (considering whether a highly intoxicated woman's fall down an embankment was the result of a police officer's separating her from her companion and then abandoning her in freezing weather); Wood v. Ostrander, 879 F.2d 583, 590 (9th Cir. 1989) (considering whether the sexual assault of an intoxicated woman resulted from police removing her from a car driven by an intoxicated driver and leaving her alone in a high-crime area). The danger or damage alleged here – interference with or injury to Great Falls' contractual rights – does not suffice.

Moreover, the record simply does not permit a finding of the extreme circumstances envisioned by the "state-created-danger" theory upon which Great Falls relies. The City's failure to meet its obligations under the lease, or its general indifference to the building's condition, cannot be considered to be of such "a degree of culpability that shocks the conscience" even when examined

under the standard applicable to summary judgment motions. <u>Id.</u> at 101. What Great Falls has shown is that the City did not share its interest in the building and, so, failed to fulfill its contractual obligations. That is a far cry from the conscience-shocking act or omission required by <u>Gormley</u>.

For these reasons, and substantially for the reasons expressed by the motion judge in his oral decision, we reject Great Falls' cross-appeal.

\* \* \*

The orders under review in both the City's appeal and Great Falls' cross-appeal are affirmed in all respects.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1406-18T3